## APPEAL OF UNITED SHOE STORES CO.

Docket No. 1143. Submitted May 8, 1925. Decided June 16, 1925.

1. The payment by a corporation of inadequate salaries to its officers for the year 1917 is not a ground for the application of the relief provided for by section 210 of the Revenue Act of 1917.

2. The efficient operation of the corporation, resulting in a turnover of its capital far in excess of the average turnover, does not result in such an abnormal condition affecting capital or income as warrants the computation of the tax under section 328 of the Revenue Act of 1918.

*Carl B. Rix, Esq.*, for the taxpayer.
*Ward Loveless, Esq.*, for the Commissioner.

Before PHILLIPS, GRAUPNER, and TRAMMELL.

Taxpayer appeals from a deficiency in income and profits taxes for the calendar year 1917 of $1,424.21, for the period from January 1, 1918, to January 31, 1918, of $28.65, and for the fiscal year from February 1, 1918, to January 31, 1919, of $209.46, a total deficiency of $1,662.32, and alleges error on the part of the Commissioner in refusing to determine its tax for 1917 under section 209 or 210 of the Revenue Act of 1917, and for the remainder of the period in question under sections 327 and 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The taxpayer is a corporation organized in 1906 under the laws of Wisconsin. It started in a small way with a capital of $5,000. Max Diamond, the president, has always held the majority of the stock. During the years in question he devoted his entire time to the business, and, in addition to his duties as president, represented the taxpayer as buyer and general manager of its stores, and, as occasion demanded, assisted as a salesman. During the years in question the taxpayer operated four retail stores—two in Milwaukee, one in Racine, and one in Fond du Lac, Wis. All of the financial matters were attended to by Diamond.

Diamond had five sons, three of whom devoted their entire time to the business and received moderate salaries. The two younger sons, who were attending school at the time, assisted after school hours and on Saturdays and during the vacation periods. No compensation was paid to them.

Diamond received a salary of $2,600 in 1917, $4,730 in 1918, and $4,730 in 1919. From this amount Diamond personally paid his traveling expenses incurred for trips to the buying market and the various branch stores. These expenses amounted to approximately

$900 a year. Dividends were declared and paid to Diamond in the amount of $1,290 in 1917 and $2,500 in 1918.

In 1917 the capital of the corporation was $5,000, which was increased in 1918 to $15,000.

For the year ending January 31, 1917, the sales of the taxpayer amounted to $90,290.35 and the invested capital for the same period was $12,874.87. For the year ending January 31, 1918, the sales were $102,150.78 and the invested capital $15,843.72. For the period ending January 31, 1919, the sales were $123,264.35 and the invested capital $15,309.56.

As appears from the foregoing statement of sales and invested capital the taxpayer turned over its capital approximately seven and one-half times each year. The average turnover of capital in the retail shoe business during the years in question was about four times. Greater efficiency in the use of its capital was obtained by the taxpayer by reason of the personal interest taken in the business by Diamond and his sons who operated it as a family affair. The average expense of retail shoe stores for managerial services during the years in question was approximately 5 per cent and the salary paid to Diamond in 1917 was inadequate considering the results accomplished and salaries paid to others engaged in the same line of business.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

PHILLIPS: Section 209 of the Revenue Act of 1917 provides for special relief only in the case of a trade or business having no invested capital or not more than a nominal capital, and section 210 provides for such relief in a case where the Secretary of the Treasury is unable satisfactorily to determine the invested capital. The taxpayer does not fall within any of these provisions.

Section 327(d) of the 1918 Act provides for special relief only where an exceptional hardship is worked upon the taxpayer by reason of abnormal conditions affecting the capital or income of the corporation. It appears that after January 1, 1918, the salary of the president was increased to $4,730. This appears to have been more nearly an adequate compensation for the services rendered by Diamond than was paid in 1917, although it still may have been less than the average compensation paid for similar services, but the situation with reference to the salary after January 1, 1918, was not such as to create an abnormal condition affecting the income of the corporation.

The taxpayer contends that because of the efficient operation of the business, resulting in a turnover of its capital far in excess of the average turnover, there is an abnormal condition affecting the capital or income of the corporation. With this contention we can not agree. Efficient operation may cause a large return on the invested capital, but it is not such an abnormal condition affecting the capital or income as would be required to bring the taxpayer within the provisions of the special assessment sections of the Act.